**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

AMUR EQUIPMENT FINANCE, INC.,

**Plaintiff,**

**v.**

JOSÉ CARDONA-FERNÁNDEZ,

**Defendant.**

**Civil No.** 25-1017 (FAB)

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court are Plaintiff Amur Equipment Finance, Inc. ("Amur")'s motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56 ("Rule 56") (Docket No. 65) and its motion for relief from order granting jury demand filed pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"). (Docket No. 67.) Defendant José Cardona-Fernández ("Cardona") opposes the motions. (Docket No. 71.) For the reasons set forth below, Amur's motion for summary judgment (Docket No. 65) is **GRANTED**, and the motion for relief pursuant to Rule 60(b), (Docket No. 67) is **MOOT**.

**I. Procedural History**

Amur filed this action against Cardona on January 1, 2025, claiming breach of contract. (Docket No. 1.) Cardona answered, filed a counterclaim of fraudulent misrepresentation, and reserved

the right to file a third-party complaint. (Docket No. 12.) Cardona alleged that Cynosure[1] defrauded him when it sold him medical equipment referred to as "Cynosure Tempsure and Sculpsure ("the medical equipment"). Cardona alleged that Amur had knowledge that Cynosure was defrauding him, and that the Equipment Finance Agreement ("EFA") with between him and Amur was agreed to under fraudulent pretenses. Id. at p. 3.

On February 7, 2025, Cardona requested a jury trial, and the Court granted the request. (Docket No. 8; Docket No. 9.) On April 4, 2025, Cardona filed a third-party complaint against Cynosure and Spark Medical Marketing ("Spark"). (Docket No. 18.) Cardona alleged that Cynosure promised him a certain number of clients and monthly profits from using the medical equipment if he agreed to hire Spark to market his services. Id. at p. 2. He relied on these promises when purchasing the medical equipment, but these were never fulfilled. Id. at p. 3.

On April 21, 2025, Amur moved to dismiss the counterclaim and strike the jury demand. (Docket No. 23; Docket No. 42.) On June 2, 2025, Cynosure moved to dismiss Cardona's third-party complaint. (Docket No. 43.) The Court granted both motions but

[1] Cynosure is referred to as Cynosure Lutronic, Cynosure LLC and Cynosure Inc. in different pleadings.

did not discuss the jury demand.[2] (Docket No. 62.) Amur filed for summary judgment on January 28, 2026. (Docket No. 65.) Cardona responded. (Docket No. 71.) On February 9, 2026, Amur filed a motion to amend or correct the order granting the jury demand. (Docket No. 67.) Cardona also opposed. (Docket No. 72.) Discovery concluded on March 10, 2026. (Docket No. 13.)

## II. Standard of Review

Federal Rule of Civil Procedure 56 provides that the Court shall grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Dunn v. Trs. of Bos. Univ., 761 F.3d 63, 68 (1st Cir. 2014) (internal citation omitted).

The role of summary judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Tobin v. Fed. Exp. Corp., 775 F.3d 448, 450 (1st Cir. 2014) (internal citation omitted). The party moving for summary judgment has the initial burden of

[2] The third-party complaint was dismissed without prejudice because there is a mandatory forum selection clause in the Purchase Agreement with Cynosure. See Docket No. 62 at p. 14.

"demonstrat[ing] the absence of a genuine issue of material fact" with definite and competent evidence. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The movant must identify "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any'" which support its motion. Celotex, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).

Once a properly supported motion has been presented, the burden shifts to the nonmovant "to demonstrate that a trier of fact reasonably could find in [its] favor." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation omitted). "When the nonmovant bears the burden of proof on a particular issue, she [or he] can thwart summary judgment only by identifying competent evidence in the record sufficient to create a jury question." Tobin, 775 F.3d at 450-51. Courts draw all reasonable inferences from the record in the light most favorable to the nonmovant, but it disregards unsupported and conclusory allegations. McGrath, 757 F.3d at 25.

Before reaching the facts and the merits of this motion, it is necessary to examine Cardona's failure to properly support his opposition pursuant to Local Rule 56. The First Circuit Court of Appeals has "emphasized the importance of local rules similar to

Local Rule 56 [of the District of Puerto Rico]." Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007); see also Colón v. Infotech Aerospace Servs., Inc., 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). This rule "[is] designed to function as a means of 'focusing a district court's attention on what is - and what is not genuinely controverted.'" Calvi v. Knox County, 470 F.3d 422, 427 (1st Cir. 2006).

Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. It requires that a motion for summary judgment "be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." Loc.Civ.R. 56(b). Any opposing statement "shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. 56(c). The facts themselves, and any opposition to them, must be supported by "a citation to the specific page or paragraph of identified record material supporting the assertion." Id. 56(e). The Court may disregard facts if they are not supported by such a citation. Id. And facts contained in either statement of material facts, if supported by record citations, "shall be deemed admitted unless properly controverted." Id.

A "party[, however,] cannot successfully oppose a motion for summary judgment by resting 'upon mere allegations or denials of his pleading.'" Garmon v. Nat'l R.R. Passenger Corp., 844 F.3d 307, 312 (1st Cir. 2016). "The nonmoving party must instead marshal sufficient evidence to show that a genuine issue of material fact exists." López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023) (citing Cherkaoui v. City of Quincy, 877 F.3d 14, 24 (1st Cir. 2017)).

Here, Cardona has failed to properly controvert the plaintiff's statement of uncontested material facts. His responses fail to contradict the proffered facts because they consist of speculation and conclusory assertions. For example, Amur's statement of uncontested facts indicates that Cardona defaulted on the loan, citing the declaration made by Karla Beran (the custodian of Amur's business records), the EFA, and the statement of account. (Docket No. 64 at p. 4; Docket No. 64-1 at pp. 1, 6, 13.) Cardona denied this statement, simply claiming that Amur and associated companies induced him to enter the contract by promising him a marketing package, and customer exclusiveness, but did not receive any of these promises. (Docket No. 71-1 at p. 4.) Therefore, he alleges, Amur defaulted first. Id. at p. 5. This denial is not supported by a specific citation to evidence on the record. Mere allegations are not evidence that

can be used at the summary judgment stage to support a claim and to defeat summary judgment. See Zilberstein v. Kendall Coll., 286 Fed. Appx. 938, 940 (7th Cir. 2008) ("Mere allegations are not 'evidence'"); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 3 (1st Cir. 2010) ("[M]ere allegations are not entitled to weight in the summary judgment calculus"); Tibbs v. City of Chicago, 469 F.3d 661, 663 fn. 2 (7th Cir. 2006) ("the entire 'Statement of Facts' section of Tibbs's appellate brief cites only to his amended complaint; mere allegations of a complaint are not evidence"); Geshke v. Crocs, Inc., 740 F.3d 74, 78 (1st Cir. 2014); ("unverified allegations in a complaint are not evidence").

Accordingly, Cardona's failure to properly controvert Amur's statements or to identify any genuine issue of material fact necessitates that the Court accept and admit Amur's statement of uncontested material facts. See Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000) (abrogated on other grounds by Casanova v. Dubois, 289 F.3d 142 (1st Cir. 2002) ("[F]ailure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.")). The Court deems Amur's statement of undisputed material facts as undisputed insofar as it finds support in the record and is construed in the light most favorable to Cardona.

See McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014). The Court makes the following factual findings based on Amur's statement of uncontested material facts the exhibits attached to it, Cardona's statement of material facts, and Amur's response to Cardona's statement. (Docket No. 64; Docket No. 71-1; Docket No. 76.) See Loc. Rule 56(c), (e).

**III. Material Facts Not in Controversy**

On June 24, 2021, Cardona entered into an agreement with Cynosure to purchase specialized medical equipment identified as "Cynosure Tempsure and Sculpsure." (Docket No. 43-1; Docket No. 71-1 at p. 7; Docket No. 76.) The agreement with Cynosure refers to a marketing package in addition to the medical equipment. (Docket No. 43-1; Docket No. 71-1 at p. 7; Docket No. 76 at p. 2.) To pay for the medical equipment, Cardona entered into an EFA with Amur on June 30, 2021. (Docket No. 64; Docket No. 64-1; Docket No. 71-1 at p. 2.) Cardona took out a loan of $165,995 to be paid back monthly over 66 months, the first six payments for $99, and the remaining 60 for $3,762.94. (Docket No. 1-4; Docket No. 64-1 at p. 6.) Under the EFA, Cardona granted Amur a lien on the equipment. (Docket No. 64 at p. 2; Docket No. 71-1 at p. 3.) The EFA listed the medical equipment as collateral and named Cynosure as its vendor. (Docket No. 71-1 at p. 8; Docket No. 76 at pp. 2-3.)

Between the execution date of the EFA and January 23, 2023, Cardona made 18 payments to Amur totaling $45,749.28.[3] (Docket No. 64-1 pp. 13-16.) Cardona has not made any payment to Amur since January 23, 2023. (Docket No. 64; Docket No 71-1.) On November 21, 2024, Amur sent a letter demanding that Cardona satisfy his contract obligations. Id.; Docket No. 64-1 at pp. 3; 10-11. Amur is the current holder of the contract and the guaranty. (Docket No. 64 at p. 3; Docket No. 71-1 at p. 6.) Because Cardona has not made payments, Amur repossessed the medical equipment. (Docket No. 64-1 at p. 4, ¶ 15; Docket No. 71-1 at p. 7.) Pursuant to the EFA, Amur can charge a default interest rate per year on the accelerated sum of the loan. (Docket No. 64 at p. 3; Docket No. 64-1 at p. 7; Docket No. 71-1 at p. 6.) Amur has been unable to sell the medical equipment. (Docket No. 64-1 at p. 4, ¶ 15.)

## IV. Discussion

Amur argues that summary judgment should be granted because Cardona breached the EFA by failing to make the required payments, and has not presented a defense or a material issue of fact to stave off summary judgment. (Docket No. 65 at pp. 5-6.) Cardona alleges that Amur "and its associated companies" fraudulently

---

[3] This total excludes the insurance premium payments that Cardona also made. See Docket No. 64-1 at pp. 13-16.

induced him to buy the medical equipment and marketing package and take out a loan to finance the purchase. (Docket No. 71-1.) Cardona states that Amur and its associated companies also failed to provide him with the marketing package that was included in his contract with Cynosure. Id. at pp. 4-6.

As a preliminary matter, Amur argues that Nebraska law applies. (Docket No. 65 at pp. 3-4.) Cardona did not respond to this argument. The Court has already determined that Nebraska law applies to the causes of action in this case. Docket No. 62 at pp. 7-10; see Naser Jewelers, Inc. v. City of Concord, N.H., 538 F.3d 17, 20 (1st Cir. 2008) ("when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.").

Pursuant to Nebraska law, "[i]n order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty." Henriksen v. Gleason, 643 N.W.2d 652, 658 (Neb. 2002). There is no dispute that Cardona and Amur executed the EFA, that Cardona has failed to issue payments since January 2023, and that Amur has not received further payments. See Docket No. 64-1. Rather, Cardona argues that Amur and associate companies fraudulently induced him to buy the medical equipment because he was promised

a marketing package and customer exclusiveness that were never fulfilled. (Docket No. 71 at pp. 2, 5-6.)

First, the Court clarifies that there is only one contact before it, the EFA. Cardona signed contracts with two different entities, a purchase agreement with Cynosure and the EFA with Amur. The EFA was a financing agreement that lent $165,995 to Cardona so that he would be able to purchase the medical equipment from Cynosure. (Docket No. 64-1 at p. 8.) The EFA was solely between Amur and Cardona. While Cynosure is listed as the vendor in the collateral section of the EFA, Cynosure was not a party or signatory to the EFA. Id. Whatever actions Cynosure may or may not have taken are not before the Court.

Second, Cardona bears the burden of proving an affirmative defense. N. Am. Specialty Ins. Co. v. Carson Stone & Supply, LLC, 489 F.Supp.3d 917, 923 (D. Neb. 2020). To establish a claim of fraudulent misrepresentation, Cardona must allege:

> (1) that a representation was made; (2) that the representation was false; (3) that when made, the representation was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) that it was made with the intention that [it be relied upon]; (5) that [the alleging party] reasonably did so rely; and (6) that [the alleging party] suffered damage as a result.

Cao v. Nguyen, 607 N.W.2d 528 (Neb. 2000).

Cardona fails at the first element. Cardona only presents to the Court a general statement that "plaintiff and its associated companies induced Defendant into the loan and purchase of the equipment and marketing package/strategy." (Docket No. 71-1 at pp. 4-7.) He does not allege with particularity the "who, what, where, and when of the allegedly false or fraudulent representation." Rodi v. S. New England Sch. Of L., 389 F.3d 5, 15 (1st Cir. 2004) (quoting Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 29 (1st Cir.2004)); see also 5A Wright & Miller's Federal Practice and Procedure §1297 (4th ed. 2025) (a defense based on fraud still needs to meet the heightened pleading standard under the Fed. R. Civ. P. 9(b)). Additionally, for support of this allegation, Cardona only points to his answer to the complaint and his contract with Cynosure. See generally Docket No. 71-1. These documents do not create a genuine issue of fact. As previously indicated, the contract in this case is the EFA, not the purchase agreement with Cynosure. And a record citation to Cardona's answer to the complaint just indicates his allegations; it is not evidence. See Borges ex rel. S.M.B.W., 605 F.3d at 3 ("mere allegations are not entitled to weight in the summary judgment calculus"); Geshke, 740 F.3d at 78 ("unverified allegations in a complaint are not evidence"). Even if the Court imputed the assertions of fraudulent actions to Amur, it would

only amount to mere speculation without more. This "is not enough to stave off summary judgment." Alicea v. Cincinnati Inc., 166 F.4th 245, 259 (1st Cir. 2026).[4]

Because Cardona has failed to show a genuine issue of fact, the Court now turns to determine Amur's damages. Amur claims that it is owed a total of $256,777.82. (Docket No. 64 at p. 3.) Cardona only contests Amur's calculation of post-breach interest, claiming that an 18 percent interest rate exceeds the amount allowed by law. (Docket No. 71-1 at p. 7.) Below is a breakdown of what Amur alleges its damages are:

| **Damages Alleged** | **Amount** |
|---|---|
| Past Due Invoices | $26,487.71 |
| Principal Amount Remaining, not including past due invoices | $158,043.48 |
| LESS 3% Net Present Value Discount | $(15,683.63) |
| Sub-total | $168,109.94 |
| Default Interest Due from 2/1/23 to 12/23/25 (18% *per annum*) | $87,930.30 |
| **TOTAL AMOUNT DUE** | **$256,777.82** |

[4] Cardona has waived the asserted several affirmative defenses in his answer because he did not argue them in his opposition for summary judgment. See Groden v. Reichert & Son Trucking, Inc., C.A. No. 16-10378-MLW, 2018 WL 1326389, at *9 n.5 (D. Mass. Mar. 18, 2018).

The Court has reviewed the alleged damages and concurs that the past due amount is $26,487.71 and that the principal amount remaining is $158,043.48.[5] The Court, however, disagrees with the Amur's calculated net present value discount. Amur does not explain its choice of 3% for the discount rate or its calculation methodology to arrive at a total discount amount of $15,683.83. Puzzingly, Amur lists the 3% discount rate in the calculation table in its brief, but in its exhibits the figure listed is 6.25%, despite the fact that the total discount amount is the same in both tables. Compare Docket No. 64-1 at p. 4 with Docket No. 64-1 at p. 16. Regardless, the total discount amount appears to be incorrect whether 3% or 6.25% is used as the discount rate. After reviewing the EFA, however, the Court finds that discount rate is 6.25%.[6] See Docket No. 64-1 at p. 7, ¶ 13.

Turning to the 18% default interest rate, Cardona argues that Amur cannot charge 18% default interest rate pursuant to Neb. Rev.

[5] The past due amount reflects six payments that Cardona missed prior to July 1, 2023, plus late fees. See Docket No. 64-1 at pp. 13-16. The principal amount due was accelerated on July 1, 2023, when Cardona defaulted on the loan. At this point in time, 42 of the 66 monthly payments of $3,762.94 remained to be paid, totaling $158,043.48, without accounting for the net present value discount (42 x $3,762.94). Id.

[6] The EFA states that the lump sum will be discounted at an annual rate of 2.5% plus 3.75%, which is the Treasury Constant Maturities rate on February 1, 2023 at the term closest to the remaining Term of the EFA, i.e., 3 years. Docket No. 64-1 at p. 7; Daily Treasury Rate Archives, U.S. DEP'T OF THE TREASURY, https://home.treasury.gov/resource-center/data-chart-center/interest-rates/daily-treasury-rate-archives [https://perma.cc/W2HH-4LDC].

Stat. §§ 45-101.03 - 45.105. (Docket No. 71-1 at p. 7.) Section 45-101.03 states that:

> Except as provided in section 45-101.04, any rate of interest which may be agreed upon, **not exceeding sixteen percent per annum** on the unpaid principal balance, shall be valid upon any loan or forbearance of money, goods, or things in action and may be taken yearly, for any shorter period, or in advance, if so expressly agreed.

NEB. REV. STAT. §45-101.03 (West 2026) (emphasis added). This limitation, however, does not apply to "[l]oans that in the aggregate principal amount of indebtedness is twenty-five thousand dollars or more." NEB. REV. STAT. §45-101.04 (West 2026). The original loan amount here was $165,995; thus, the limitation of 16% interest rate does not apply. See Docket No. 64-1 at p. 6. Accordingly, Amur can charge an annual 18% default interest. (Docket No. 64-1 at p. 7, ¶ 13.) Having established the proper percentages, the Court finds the following amounts are due:

[continued next page]

| **Damages Alleged** | **Amount** |
|---|---|
| Past Due Invoices | $26,487.71 |
| Principal Amount Remaining, not including past due invoices | $158,043.48 |
| LESS 6.25% Net Present Value Discount | $(16,421.25)[7] |
| Sub-total of Principal Amount less 6.25% | $141,622.23 |
| Default Interest Due from 7/1/23 to 3/30/2026 (18% per annum of Principal Amount Remaining) | $71,377.61 |
| **TOTAL AMOUNT DUE[8]** | **$239,487.55** |

Accordingly, the Court grants summary judgment. Amur, however, continues to have a duty to dispose of the medical equipment and must do so in a commercially reasonable way. See Neb. Rev. Stat. Ann. § UCC § 9-610 (West). Any cash proceeds of the disposition shall offset the amount that Cardona owes. See id. at § 9-615.

[7] Amur is owed 42 payments of $3,762.94, and there is an annual discount of 6.25%. First, the Court converts the annual rate to a monthly rate (6.25%/12 = 0.00520833%). Second, the Court plugs in the numbers, using a present value of an annuity formula: PV=PMT x (1-1(1+r)^-n)/r, where "PMT" is the monthly payment ($3,762.94), "r" is the monthly discount rate (0.00520833%) and "n" is the number of months (42). This calculation gives the present value of about $141,622.23. Finally, to calculate the discount, the Court subtracted $141,622.23 minus $158,043.48, totaling -$16.421.25.

[8] The total amount due is the sum of the sub-total principal amount, the 18% interest on the sub-total, and the past due amount.

Because we grant Amur’s motion for summary judgment, its motion for relief from the order grating Cardona’s jury demand is **MOOT.**

## IV. Conclusion

For the reasons set forth above, Amur’s motion for summary judgment (Docket No. 65) is **GRANTED** and is awarded $239,487.55 in damages. Amur’s motion for relief pursuant to Rule 60(b), (Docket No. 67) is **MOOT.**

The counterclaim and the third-party complaint having been previously dismissed (Docket No. 62), judgment shall be entered in accordance with this opinion and the partial judgment entered on October 16, 2025 (Docket No. 63.)

This case is now closed for statistical purposes.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 31, 2026.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE